GARTH, Circuit Judge,
dissenting in part and concurring in part:
I agree with Judge Rendell that the jury verdict in favor of plaintiff inmate Tavius Lindsey should be affirmed as to Scott Faunce. I write separately, however, because as to Fauver and Hilton, there was insufficient evidence that they were deliberately indifferent. Accordingly, as to those two defendants, I would vacate the jury verdict.
A finding of deliberate indifference requires proof of subjective knowledge, not objective knowledge, “meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware.” Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir.2001) (emphases add *798 ed). Although subjective knowledge “can be proved by circumstantial evidence,” the excessive risk must be “so obvious that the official must have known of the risk.” Id.
The relevant question here is not whether Hilton and Fauver did take, or would have taken, reasonable steps to prevent the harm to Lindsey; that question is only reached if it is first established that Hilton and Fauver had actual, subjective knowledge of the risk of harm before Lindsey was assaulted such that they could have taken action to prevent it. Without that timely knowledge, there can be no deliberate indifference.
The facts cited by the majority do not meet this standard. The majority relies primarily on the fact that ombudswoman Maggie Agüero met with Hilton and conveyed her concerns that prisoners were being abused. But Aguero’s testimony never establishes when the meeting occurred. Agüero appears to have met with Hilton sometime on August 14, the same day that Lindsey was assaulted.[11] According to her testimony, she discussed her concerns first with Faunce when she arrived at Bayside at approximately 8:00 A.M. App. 714a. This statement, however, was contradicted by a timesheet that recorded her arrival at Bayside at 3:00 P.M. — several hours after Lindsey was assaulted. App. 715a. This timing is relevant because Agüero did not meet with Hilton until after her initial meeting with Faunce, and Fauver in turn learned of Aguero’s concerns through Hilton. App. 771a. Without any testimony as to when Agüero met with Hilton, the jury could not have determined, and would have no basis for inferring, that Hilton and Fauver had the requisite knowledge to be liable for the assault on Lindsey.[12]
To bolster its position, the majority also argues that Hilton was evasive when asked whether he had witnessed any injured inmates during earlier tours of Bayside. Although his answer was equivocal as to whether he saw injured inmates, he clearly denied that he witnessed anything suggesting systematic brutality. Even if he did observe injured inmates, it is not enough that he should have known that they were being assaulted by SOG officers; he must have had actual knowledge of the excessive risk of harm, or the excessive risk must have been patently obvious. All that was proffered was the suggestion that someone present at Bayside at the time should have seen the bruises, cuts, and abrasions on these inmates, and therefore he should have known that rampant abuse was occurring. These “should haves” do not satisfy our deliberate indifference standard, and therefore cannot constitute sufficient evidence to hold Hilton and Fauver liable.
Accordingly, I respectfully dissent as I would affirm the jury verdict as to Faunce, but vacate it as to Hilton and Fauver.

. The majority responds at great length that the meeting between Agüero and Hilton might have occurred on August 13 rather than August 14. The point is simply that the timing was, and remains, wholly unknowable based on the record available to the jury. In any event, the timeline suggested by the majority is especially improbable given that, when Agüero reported to Faunce on the evening of August 13, she had just completed a 14-hour shift, leaving open to question when she could have arranged an after-hours meeting with Hilton. App. 706a, 770a. A midnight rendezvous seems even less likely to have occurred in light of Aguero's testimony that she still remained skeptical of the inmates' reports of abuse at that time. App. 711a.

. Notably, the District Court did not rely on, or even mention, this meeting in its opinion.